### Rietmann v. Rietmann.

(Decided March 7, 1916.)

#### Appeal from Boone Circuit Court.

1. Divorce—Custody of Children.—In judgments in divorce cases, as well as on motions to modify them, the court in adjudging the custody of infant children will be governed by the welfare of such child and will not give preference to either parent as such.

2. Divorce—Custody of Children.—Evidence examined and found insufficient to justify a modification of a divorce decree granting to the wife the custody of the infant child.

S. W. TOLIN for appellant.

CLORE, DICKERSON & CLAYTON and W. W. DICKERSON for appellee.

·Opinion·of ·the Court by ·Judge Thomas—Affirming.

Some time previous to November 30, 1914, the date not being shown by the record, but which we presume from statements in the briefs, was not more than two years previous to that date, there were two suits filed in the Boone Circuit Court, one by appellant against appellee, his wife, and one by the wife against the husband, the appellant, in ·which the plaintiff in each of the two suits sought a divorce from the defendant. As to what other relief was prayed for in·these two suits, we do not know because those pleadings are not made a part of this record. At any rate these suits were, some time before hearing, consolidated and upon submission after preparation, a judgment was rendered granting to appellee an absolute divorce from the bonds of matrimony with the appellant and allowing her a lump sum of alimony of $1,665.00, and giving to her the custody of their only child, Mabel Rietmann, a girl who at that time, as we gather from the statements *dehors* the record, was something in the neighborhood of twelve years of age. The judgment also required appellant to pay to appellee between the first day·of May and the first day of September·after the rendition of the judgment the·sum of $10.00 per month for the support of the infant daughter and to pay after September the sum of $15.00 per month for that purpose. There is nothing to show that either ·this alimony, or the monthly allowance for the benefit of the daughter, have either been paid, but inasmuch as we find no complaint in regard to these matters, we presume that the judgment in these respects has been and is being fully met by appellant.

After this judgment the appellee and her daughter moved to and took up their residence at a place called North Bend, in Hamilton County, Ohio, which seems to be just opposite the river from where the appellant resides on a farm of about 53 acres in Boone County, Kentucky. After living there a short while the mother and daughter moved to Connersville, Indiana. About May 1, 1914, the·appellee secured a position as housekeeper for a farmer by the name of Wagner, who lives between seven and eight miles from.Osgood, in Ripley County, that State, where she and her daughter have since resided and where appellee attends to the duties of looking after the household affairs of her employer,

she being at times assisted  by her daughter, Mabel Rietmann.

On November 30, 1914, the appellant gave notice to his wife, the appellee, that he would on the 16th day of December following, it being during a regular term of the Boone Circuit Court, enter a motion and ask the court to set aside so much of the judgment in the divorce proceedings as granted to her the custody of their only child Mabel Rietmann, and to adjudge to him the custody of the child. The motion was made on the day specified in the notice, but was not heard until the following April, 1915, term, at which time after hearing the evidence offered by both parties, the court overruled the motion and declined to modify the judgment as requested therein. From the judgment overruling the motion this appeal is prosecuted.

The only grounds in support of the motion found in the record are those stated in the affidavit of the appellant filed upon the hearing, and which affidavit, omitting heading, signature and jurat, is as follows:

"The affiant, Jacob Rietmann, states that he is the father of Mabel Rietmann, for whom he is asking the court to award the custody of said Mabel Rietmann; he states that after the divorce was granted in this case and the defendant, Mary Rietmann, was awarded the custody of said child, she has lived in different places and in different states; that she first lived in Hamilton county, Ohio, and in a little cramped house and with another family; said house was located in the hillside and was not a suitable place for a child of that age to live; that she next moved to Connersville, Indiana; from there she moved to Ripley county, Indiana, and, affiant is advised that his said daughter, Mabel Rietmann, and her mother, Mary Rietmann, are living with a man who has no wife, no mother, no sister or aunt, living in the same family. That no other woman has lived in the family where the said Mary Rietmann and Mabel Rietmann now reside, and no other woman has lived in that family since the defendant, Mary Rietmann, has been living there.

"And affiant further states that his said daughter, Mabel Rietmann, is permitted by her mother to go long distances by her mother unaccompanied and remain out and away from home without any suitable person looking to her care and protection, and said child has so

remained away from her mother and among strangers exposed to the temptations and dangers of designing men and women.

"Affiant further states that he has sent the railroad fare to the child's mother to come to his home in Kentucky that he might enjoy her society, but that she failed to come, although she received the money. He further states that his said daughter is now going on fourteen years of age, needs a permanent home, a proper protection against the wiles and snares of evil and designing persons. And he makes this affidavit in support of his motion now pending in this court to award him the custody of the said Mabel Florence Rietmann."

It will be seen that there are three grounds sought to be stated which would justify, in the mind of the affiant, the court granting to him the relief which he seeks. They are: (1) The poverty of appellee and the consequent necessity of herself and daughter occupying as their residence less capacious quarters than others more fortunate financially; (2) that the appellee had permitted the daughter upon some occasions to be on the streets of North Bend, Ohio, engaged in, what appears, to appellant, the obnoxious exercise of skating, and that on occasions, or possibly one occasion, she was permitted to make a trip to Cincinnati, where she remained over for one night and occupied a room at some boarding house, and (3) the fact that appellee had been employed by and engaged as a housekeeper of Mr. Wagner.

First. In regard to the first ground mentioned it may be said that the fact of poverty alone has never been accepted by the law as a legal reason for declining to give either parent the custody and control of the issue of the marriage on a judgment for divorce or to divest these of such control after divorce. Formerly, everything else being equal, the rule was that the father would be preferred in such matters as this and that he would *prima facie* be the one who would be entitled to the custody of such infant, but this rule has been abandoned and the law now is that the first and chief consideration of the court in such cases is to consult the interest of the child and to conform its rulings so as to subserve the best interest of the child. Kentucky Statutes, sec. 2123. The evidence heard in the divorce proceedings is not before us, but when the court gave to the mother the

custody and control of the child, we presume that he was fully justified in doing so from the evidence heard in the divorce proceedings. There is an utter failure to develop any reason why the motion for the reason urged should have been sustained.

Second. Upon a few occasions in attempting to visit her father, as the judgment in the divorce proceedings permitted, the daughter would either go to Cincinnati and from there to North Bend and across the river to his home, or would go to Lawrenceburg, Indiana, and from that place to North Bend. When the trip would be made by way of Lawrenceburg on some occasions the little girl would have to wait at that place for a short while in order to catch the train that would stop at North Bend. When she would get to North Bend she would necessarily have to wait there a short while until she could procure conveyance across the river to go to her father's home, and on one or two occasions while waiting for a chance to cross the river, she with other children, engaged in skating, but there is absolutely nothing in the record to show that at these times she was associated with anyone except highly respectable people and who were her acquaintances. At one time she spent the night in Cincinnati with some of her relatives. They secured lodging at a boarding house, and there is not a particle of evidence in the record to show that this boarding house was not perfectly respectable, there not being an intimation to the contrary; and while the record does not show positively, we infer that the next day the daughter went from Cincinnati to her father's home over into Kentucky. From this it is easy to be seen that there is an entire dearth of testimony showing any abandonment of parental control of the child by its mother.

Third. Concerning the third ground stated in appellant's affidavit, and in which is embodied the insinuation that appellee was living in adulterous relations with her employer, there is not only a total absence of any proof of the charge, but on the contrary the testimony absolutely refutes the insinuation. The proof shows that Mr. Wagner is an exceedingly thrifty farmer; that he is a widower and has a son whose age is about a year younger than the daughter of the parties to this proceeding. There is no testimony in the record from which even a suspicion of improper relations between

appellee and Mr. Wagner exists. The neighborhood is the one in which the appellee was reared and in which she has a number of relatives. Her daughter has access to and attends the schools in that vicinity, and Mr. Wagner, when the conditions of the weather necessitates it, provides suitable transportation for the daughter to and from her school. She has already graduated in the primary department and is now enrolled as a pupil in a higher grade; and while there are no other ladies residing at the house, yet the proof shows that the neighboring women visit Mrs. Rietmann, as is customary in rural communities. It is shown that the appellee is of German birth and possesses the industry and thrift which characterize that race of people. She no doubt is an excellent housekeeper, and so far as the proof in this case shows, is as virtuous as any woman in the land.

Appellant relies upon the following excerpt from volume 2, Robertson's Kentucky Criminal Law, page 830, in order to prove his covert charge of adulterous relations between appellee's employer and herself: ''Thus the living together of a man and woman unmarried, which is generally known throughout the neighborhood, is sufficient to constitute open and notorious lewdness, without proving it to have been in a street or under the immediate observation of strangers.''

The quotation is supported by the Tennessee case of Grisham v. State, 2 Yerger, 589, the facts in which bear no similarity to those of this case. The author is attempting to set forth a rule of presumption, and when the relationship, as stated by him, between the parties is dissociated from other facts which completely dispel the presumption, it may be considered as a fair rule of evidence, but the circumstances are so far different in the instant case as to destroy its application altogether; these differences being so manifest as to need no pointing out by us.

We are not prepared, nor does the law require us, to say that because she seeks and obtains honorable employment and manifests a disposition to ''keep the wolf from the door'' and to so locate and situate herself as that her daughter will have access to a high grade system of public schools, that she thereby shows an unfitness to be the custodian of her daughter, although the employment in which she is engaged is that of housekeeper for a widower. To do so would reduce her con-

dition from that of a thrifty, willing and contented housekeeper to one of a lonely outcast, all brought about by the faults of her husband, as judicially found by the divorce decree.

The evidence does not justify the court, either for the benefit of the child, or other reason, in denying to appellee the companionship of her daughter as her custodian. If in the future facts should develop justifying the modification of the divorce proceeding in regard to the custody of the child, it may be done by proper proceedings in the court below, but no facts justifying the action are shown in this record.

It results therefore that the judgment appealed from should be and is affirmed.