# Wacker v. Wacker.

June 6, 1939.

James Garnett, Judge.

J. W. Clements for appellant.

Marion F. Wisehart for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

Upon abundant evidence a divorce was granted Lucy Wacker from Julian R. Wacker because of cruel treatment. The plaintiff appeals that part of the judgment denying her the custody of both of their children.

The girls were five and six years old, respectively, in the summer of 1937, when the evidence of the plain-

tiff was heard. Cross-examination by the defendant's counsel consisted principally of insinuation of sexual misconduct on the part of the wife. But there was not an iota of evidence to sustain such innuendo. The defendant submitted no proof and judgment was rendered in December, 1937. It is better that no record be made here of his gross abuse and cruel treatment. It is sufficient to say that the record creates the confidence that the father was not fit to have the personal custody and care of the little girls or either of them, and that the mother was in every respect morally and personally suitable to have them. The judgment recites that one of the little girls was then and had been for some time with her maternal grandmother in Lebanon, while the mother was employed in Louisville, and the other child was with her father, who lived with his mother in Louisville. It is further recited that the mother does not have a suitable place in Louisville where she can maintain the children, and the father's income of $14 a week is not sufficient to provide a home for or to maintain the mother and the children. It was, therefore, adjudged that the plaintiff should retain the custody of the child under her control and permit her to live with her mother in Lebanon, and that the defendant retain the custody of the child under his control and permit her to live with his mother in Louisville. Provision was made that each parent should have the possession every Sunday of the child given to the other. The defendant was required to pay to the plaintiff $5 a week as maintenance for herself and the child in her custody until further orders of the court. If and when the plaintiff has provided suitable quarters in Louisville for herself and children, she has the right to ask for a modification of the judgment relating to the children's custody and to alimony and maintenance.

The evidence reveals that the father had been working for small wages and that the mother had also been pretty regularly employed in a laundry or a factory or a store. Her last place was in a home for infants. The defendant had lost his job with the taxicab company when proof was taken. He caused his wife to lose her job by annoying the management of the institution in demanding that her wages be paid him, in complaining that she did not give up half of her meager earnings to him instead of using them to care for herself and children, and otherwise. The superintendent, testifying to

the good character and conscientious qualities of the wife, stated that she would be given a place in the institution again if the management were assured they would not be annoyed by the husband. A church, to which the parties belonged, and which the wife attended with her children regularly, paid their rent for a time. The poverty of the parties naturally required that they live in crowded and unattractive places. After the separation the mother was compelled to live in rooming houses or with friends and to pay others to look after the children.

Such is the extent of the record on this aspect of the case. There is nothing therein concerning the whereabouts of the children nor the conditions of the grandparents and their homes. Such omissions induced the chancellor, in the conscientious discharge of the very heavy responsibility placed upon him, to make investigations personally and through others in whom he had confidence. He recites in the judgment that for the purpose of aiding him in making a proper disposition of the children he had a woman investigator connected with the Juvenile Court to look into the living condition of the parents. Her report is in the record. While in Lebanon Judge Garnett made a personal investigation and had gathered information through friends as to the suitability of the home of the plaintiff's mother, who resided there. He had likewise personally visited the home of the defendant's mother in Louisville and had a deputy sheriff make investigations as to its suitability. It is further recited that the parties were before the court upon a number of occasions pending the final determination of the case and that the judge had the children brought before him and talked with them privately.

It is this inquiry outside the record that the plaintiff complains of on the appeal, insisting that the case should have been and should now be decided upon the record, made in accordance with the established rules of practice.

It is apparent that the chancellor recognized the personal fitness of the mother to have the custody and care of her little girls. He was familiar with the ruling of this court that the mother's right to children of tender years should prevail over the claims of grandparents unless she is shown not to be suitable for that responsibility. Campbell v. Campbell, 233 Ky. 423, 25 S.

W. (2d) 1013. He was also familiar with the declarations that the poverty of the mother alone is not a legal reason for declining to give her the children. Rietmann v. Rietmann, 168 Ky. 830, 183 S. W. 215; Skidmore v. Skidmore, 261 Ky. 327, 87 S. W. (2d) 631. And above all, with the inflexible rule that the welfare of children is the paramount consideration that controls their disposition by the courts when confronted with the tragedy of a broken home. That is not only a statutory requirement, Section 2123, Statutes, but the universal opinion of the judiciary. In this case the unfortunate poverty of the mother, who the uncontradicted record establishes to be suitable for the care and rearing of her little girls, produced the situation which the chancellor found from outside information demanded the separation of one of the children from her. Neither parent has any right that can be allowed to militate seriously against the welfare of their child or children. In the strife for possession there is sometimes danger of losing sight of this fact. Judicial experience teaches that often the disputing parents are more influenced by their inherent love and own desires and are more alive to the satisfaction of their own feelings and interests than to the true objective of the inquiry. As is well said in Corrie v. Corrie, 42 Mich. 509, 4 N. W. 213, 214:

"No other occasion can call more loudly for judicial vigilance in reaching for the exact truth, and in putting aside with an unsparing hand the mere technicalities of procedure.

"The fate or interest of the child is not to depend on what the parties may see proper to state or to evade in their formal altercations, nor on any artificial rule of pleading. There should be full inquiry and an exhaustive examination on oath in order that the tribunal may have all the light practicable."

In cases of this kind there will be no interference with the chancellor's award of custody unless it is made to appear quite satisfactorily that there was an abuse of judicial discretion. In this particular instance the chancellor's interest in the welfare of unfortunate children is well known to every member of this court, and there is, therefore, a special confidence in his judgment. The circumstances seem to have justified his independent inquiry, and we cannot but feel that his disposition of

these little girls was proper. But we are confronted on a review of the record by the necessary and controlling principle that the propriety of a judgment is dependent upon the evidence heard and not upon what the court may have learned or known outside the record. Coleman v. Coleman, 256 Ky. 530, 76 S. W. (2d) 593. Our Civil Code of Practice prescribes the manner and mode of taking testimony. Sections 543, 552, and 708. We are confined in our consideration to testimony taken in accordance therewith.

In Scott v. Cohn, 134 Ill. App. 195, on a hearing before a chancellor seeking to modify a judgment awarding custody of a child in a divorce proceeding, there was no evidence which in any way tended to show that the mother had become or was a proper person to have his custody for a part of the time. The tendency was rather to the contrary. The record disclosed that during the hearing the judge suggested that he would make a further investigation of the character of the man "whom she (the mother) now calls her husband," and in the colloquy with counsel it was agreed by them that the court might do so. When the hearing was resumed two months later the judge reported that he had caused an investigation to be made by the police department of Chicago, but had made no personal inquiry. He had thereby satisfied himself that the man was all right and "from what I hear of Cohn I am very well satisfied that that child will not be injured in any way." In reviewing the judgment rendered accordingly, the appellate court said:

"If the chancellor might decide partly on an investigation made out of court, such as it is claimed was made in this cause, then he might decide wholly on such investigation, the only difference between the two cases being not in kind, but in degree. No agreement between counsel, such as is claimed to have been made, can bind the minor, whose interest is the main question to be considered."

It was upon this reasoning that the Supreme Court of Illinois affirmed the decision of the appellate court in Cohn v. Scott, 231 Ill. 556, 83 N. E. 191, 121 Am. St. Rep. 342. The same conclusion must be expressed by us in this case.

Being confined by the limitations of the testimony and the reasonable deductions therefrom, we are con-

24

strained to hold the judgment to be erroneous in the particular under consideration, and to express the opinion that the custody of both children should have been awarded to the mother, with provisions for visitation and temporary custody by their father. Since much time has elapsed since the record was made, conditions have doubtless undergone a change and the case may be reopened upon motion of either party or by the court sua sponte.

Complaint is made that the circuit court failed to allow an attorney's fee to the plaintiff. The judgment expressly reserved that matter for further adjudication so it is not before us.

The judgment is reversed.