## Sowders v. Sowders.

April 29, 1941.

Floyd Taylor for appellant.

G. R. Drinnon and J. W. Smith for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

The appellant, Ata Sowders, and the appellee, Ancil Sowders, were married in Claiborne County, Tennessee, in April, 1933. In the same year a boy they named Leland Sowders was born to them as the issue of their marriage. Also, in the same year, the appellee separated from his wife, apparently deserting the mother and child, and went elsewhere in Tennessee to live with his aunts. Further the appellee, apparently having lost all interest and concern as to the welfare of his wife and child for a period of about two years and having been charged with their desertion, entered into a written agreement with his wife, whereby she was to have the custody of the child and he was to contribute and pay to her $10 a month towards his support.

It appears that repeated court proceedings were required to coerce the husband's performance of his agreement in respect to making these monthly payments called for by it and also that during this period, following their separation, that he had practically abandoned his wife and child and that in 1936, having returned to live in the mining town of Fonde, in Bell County, Kentucky (just across the state line from the nearby home of his wife in Tennessee), he instituted a divorce proceeding against her, which it appears was unresisted by the wife and resulted in a decree being entered, in harmony with the terms of their earlier separation agreement, whereby he was granted a divorce, the wife awarded the custody of their infant child (then some three years of age) and the father ordered to pay the wife $10 a month towards his support and maintenance.

It further abundantly appears that appellee was again indifferent to and failed to obey the court's order directing his monthly payment towards the support of the child, making it necessary to repeatedly bring him before the court for enforcing his performance of its order.

It is testified by the wife and her mother, though denied by appellee, that by reason of these repeated

warrants issued against him to secure his payment of the support allowance, he told the wife that if she continued to "law" him about it, he would take the custody of the child away from her and when asked what he would do with the child, if its custody were so changed, he replied that he "would give it to just anyone."

It appears that the appellee's attitude of indifference and neglect towards his wife and baby began almost before the birth of his child and continued from such time up to and through their years of separation and later divorce, such neglect and indifference being manifested in a large measure by the appellee's continued abandonment and repeated failure to comply with the court's order directing his payment of a monthly contribution towards the support of the child. In the fall of 1939 the husband was again brought before the court in response to a rule for failing to pay the directed monthly support allowance and he then filed, as appellant testifies he had threatened to do, his petition in the Bell circuit court, asking that his former divorce action against the appellant be redocketed and that the said judgment entered therein, or so much thereof as gave the mother the custody of the child and required of him the payment to appellant of $10 a month towards its support, be set aside and in lieu thereof that the court enter another judgment changing and transferring from the mother to him the child's custody and control.

The case was thereupon ordered redocketed as prayed for by the petition.

This modification of the judgment sought by appellee was resisted by appellant, who answered denying the allegations of the petition that the welfare and best interest of the infant son would be better cared for and advanced by transferring its custody and control to the father, for the reasons recited that since the decree was entered in the former divorce action, the plaintiff had remarried his first wife, Gladys Sowders, and that they, together with their little girl born to them, were all residing and keeping house in a five-room dwelling at Fonde, Kentucky, they were renting from plaintiff's employer, the Clear Fork Coal Co., operating there; that the appellant had not remarried, but still resided on the small isolated farm of her mother in a small box dwelling, located across the state line in Tennessee; that she had no means and was unable to properly provide

for the child's support; that their home is some three miles distant from the nearest school and that the dirt roads leading thereto are practically impassable in bad weather and during the winter, rendering it almost impossible for the child to attend school at such times; also, that appellant has two other children dependent upon her for support and that owing, to such circumstances and conditions of living and her lack of means, she is unable to properly care for and promote the comfort and welfare of their child, Leland. He further alleged that on the other hand, should the child's custody be granted him, the child would be regularly placed in the fine eight-room graded school maintained at Fonde, which is modern and well heated and located within 150 to 175 yards of his home and also that in this mining town of Fonde, where he and his family live, Sunday school and church services are conducted each week and that if he is given custody of the child he will be able to furnish it both with a better support and an opportunity to obtain an education; that his present wife, with whom he is living, has consented to have this child live with them; also he charged that a large portion of the money he has contributed to the appellant for the support of their child has been used for the benefit of herself and others and not for the sole benefit of the child.

Appellant filed answer traversing these allegations of the petition and affirmatively pleaded that the child's welfare would be rather hurt than helped by transferring his custody over to the father; that she had always had the care and custody of the child, ever since its birth, or throughout the period it was seemingly forgotten, neglected and abandoned by the father; also that she had given him and he had enjoyed a good home and the affectionate treatment and consideration given him by all the members of the household; that she lived with her mother in an ordinary, good farm home, near and accessible to which was a good graded school and churches and Sunday school, the weekly services of which they all, including Leland, regularly attended; that while the school was some two miles or more distant from their home, it was yet accessible for Leland, who was just becoming of school age, as he regularly went to school with the five older children of her brother living in the home, partly owned by her; that this broth-

274

er, during periods of bad weather and bad roads, took Leland with his children to school in his truck, as he made his daily trip up to the coal mine where he was employed at good wages and out of which he testified he willingly furnished all needed family supplies; also that she had been able, with the help of her family and the allowance provision made for her child's support and her efforts contributing thereto, to keep Leland well dressed and well provided for and under the healthful influences of home, church and school. On the other hand, she alleged that if the child were given over to the custody of the father, he would be subjected to the baneful temptations and influences rife at the mining camp where his father lived and also subjected to indifferent and likely unkind treatment at the hands of a stepmother; under whose dominion he would mostly be left and from whom no affectionate concern and care for his welfare could be expected, as she had given over even her own little girl to her stepfather, who had adopted it.

Further, she charged that the father was an unfit person to have its custody, as he was a man addicted to drink and the "fleshpots" and a frequenter of saloons and dance halls.

A reply, denying these charges, completed the issues.

Upon the issue of the appellee's being a man of dissipated habits and unsuited to be the custodian of his infant son, the appellee introduced as his witness his Sunday school teacher, who stated that although the plaintiff had been, at a time some four or five years ago, a dissolute man, given to dissipation, in his judgment, speaking as his Sunday school teacher, he had for the past two years become a reformed man and had now a good reputation.

Proof was heard upon these issues and upon submission of the cause the learned chancellor decreed that so much of the former decree "as respects the custody of said child be and the same is hereby modified, and the plaintiff * * * is given custody of said child for and during the school term at Fonde, Kentucky, which term is for a period of nine months, during each and every year, and the remainder of the time, the same being three months per year, the defendant shall have

the custody of the child, subject to future orders of the court. During the nine months of each year in which the plaintiff has the custody of said child he shall be absolved from paying the ten dollars per month to the defendant for the maintenance of said child."

The parties each contended that the welfare of the child demanded that it be given them at all times. The appellee was willing to abide by the judgment. The appellant is not, and hence this appeal.

Under Section 950-1 Kentucky Statutes, this court is expressly forbidden to reverse a judgment granting a divorce, but it may review the judgment of the chancellor in a divorce case in other respects. However, while having such express statutory authority to reconsider that part of a judgment of divorce with respect to its awarded custody of the child and support allowance, as we are now called upon to do to determine who shall have the custody and care of the child of these divorced parents, we are called upon, as in all other cases involving the custody of minor children, to take into consideration all the circumstances of each particular case and dispose of the child or children in such manner as may appear best calculated to secure for them proper care and attention and opportunity for a proper education. The controlling and determining consideration is as to whether the custody of an infant of tender age, awarded, as the case may be, to the mother or father, is best calculated and tends to promote and enhance the welfare and proper rearing of the child. "Neither parent has any right that can be allowed to militate seriously against the welfare of their child or children." Wacker v. Wacker, 279 Ky. 19, 129 S. W. (2d) 1043, 1045. "The general rule deducible from the opinions in this state is that the custody of a child of tender years should be committed to the care of its mother, if she be a proper person." Riggins v. Riggins, 216 Ky. 281, 287 S. W. 715, 717. "The dominant thought is that children are not chattels, but intelligent and moral beings, and that, as such, their welfare and their happiness are of first consideration." 17 Am. Jur., Section 683, page 517. "Parents are under an obligation to support their children. * * * The primary duty to support the children of a marriage is upon the husband." 17 Am. Jur. Section 692, page 527. "A divorce does not relieve the father from liability for the support of the children, and

when he is a fit person, he should, under ordinary circumstances, be given the preferential right to the custody of adult children, while the custody of children of tender years may very properly be awarded to the mother. This right of the mother may be recognized although she is the party in fault, if such fault does not reflect on her moral character.'' 17 Am. Jur., Section 683, page 517.

Such were the guiding considerations stated to be in determining as to who of the divorced parents should be awarded the custody of their child.

In the case of Shehan v. Shehan, 152 Ky. 191, 153 S. W. 243, 244, we said:

"Under the common law, generally, the father was entitled to the custody of his infant child; but the more modern doctrine requires the chancellor to look to the happiness, welfare, and comfort of the child, and to confide its keeping to that parent whose ability, time, and attention can best be devoted to its care and welfare. Section 2123 of the Kentucky Statutes expressly provides that, in making orders for the care, custody, and maintenance of minor children of divorced persons, the court shall in all cases have the care and custody, the interest and welfare of the children, principally in view."

However, the chancellor was clearly not precluded from changing his award made as to the custody of this infant child from the mother to the father, if he found upon the record that such changes had occurred since the time of their divorce in the condition of the parents or in their habits, character and fitness as to make it advisable to change the child's custody as promoting its welfare and happiness.

We are further not unmindful of both the fact and the rule that in a divorce suit the chancellor ordinarily exercises sound judicial discretion in awarding the custody of the parties' infant child and that generally, where there is no more than a doubt as to the correctness of the chancellor's conclusion respecting the custody of divorced spouses' infant child, this court should affirm the chancellor's judgment awarding its custody. Travis v. Travis, 282 Ky. 215, 138 S. W. (2d) 336. See, also, Wacker v. Wacker, supra.

We have very carefully read and considered the proof introduced by the parties for and against the modification of the decree entered in the parties' earlier divorce suit, awarding the custody of their infant child to the mother.

It thereby appears that the main reliance of the appellee, upon which he insists the award of the chancellor transferring the child's custody from the mother to him should be affirmed, is that the poverty and isolated home condition of the appellant is such as prevents her from properly caring for the interest and comfort of the child. On the other hand, the wife contends that appellee is an improper custodian for their now seven year old child, in that his conduct towards the child has continuously shown him to have no real interest in or affection for it and that his now seeking its custody is motivated only by spite and the desire to be absolved from contributing the monthly allowance of $10 towards its support. Also, she urges the former delinquencies and immorality of the father as making him an unfit custodian of the child; that since the entering of the divorce decree, he has remarried his first wife and is now living with her and the child born to them and her mother and stepfather. She urges, too, that the father's reputation, in the respects above stated, is bad and that awarding him its custody would only take him from his mother, in whose constant care and companionship he has found comfort and happiness, and tend to destroy it by placing him with strangers in a new home, where he would miss his mother's companionship and be, for the most part, under the care and dominion of a stepmother, having no affection or interest in him or in children, as evidenced by her willingness to give the control and custody of her own child over to her stepfather.

We are not impressed by this showing of the evidence that the change or division of the custody awarded by the learned chancellor can be accepted as promoting the interest, happiness and welfare of this infant boy, or that, even should it result in his living in a somewhat better house and more regularly attending a larger school, due to the circumstances under which these somewhat boasted changed conditions are offered, they can reasonably be expected to better serve or improve the interest and welfare of the parties' little son yet of tender age.

Looking to the grounds urged by appellee for the change, this court has declared that under Section 2123, Kentucky Statutes, providing that on awarding the custody of minor children in divorce cases, the welfare of the children shall be kept mainly in view, the poverty of the mother constitutes no legal reason for declining to give her the custody and control of a minor child. Rietmann v. Rietmann, 168 Ky. 830, 183 S. W. 215; Grow v. Grow, 270 Ky. 571, 110 S. W. 275.

In a controversy between the parents over the custody of the child, there is often overlooked the controlling consideration of what disposition will best promote its normal happiness and welfare. We in no wise question the learned chancellor's familiarity with the well-settled rules resting both on statutory requirement as well as of the sanction of universal judiciary opinion, that in cases of this kind, asking revision and modification of a decree made as to the care and custody of the child, its interest and welfare is to be kept principally in view and be the controlling consideration in the award of its custody.

We further do not overlook the fact that the making of the proper provision for the custody of an infant, growing out of the differences between its parents, is one of the most delicate, as well as the most important, duties resting upon the chancellor. Just as it is likewise difficult for this court to lay down specific rules upon the subject which will be just and adequate under the varying circumstances, facts and situations that may arise and where, therefore, no more than a doubt arises as to the correctness of the chancellor's conclusions reached in the exercise of his judicial discretion— ordinarily sound—in awarding the custody of divorced parents' child, the court will approve the chancellor's award.

It is further our conclusion, beyond the peradventure of a doubt, that the learned chancellor has here erroneously exercised his judicial discretion in changing and so modifying his former award, entrusting the child's custody to the mother, as to apportion its custody between the father and mother by transferring it to the father during the nine months covered by the school term and awarding it to the mother during the vacation or remaining three months period of the year and has also erred in absolving the father during the nine

months period of his custody from the payment to the mother of the monthly support allowance previously awarded. At the same time, having restored to the mother the child's custody, we deem it but a fair recognition of the natural right of his father that he should be accorded reasonable access to his son, Leland, and to such end the court will enter an order giving appellee the right to visit and be with his child for a few hours on such occasions as the court may deem reasonable and proper under the circumstances.

Further, it is our conclusion that the directed granting of access to the father, to see his infant son at reasonable times and at reasonable places other than at the mother's home, should not absolve appellee from making his contribution towards the child's support during such short periods as he may from time to time be allowed to have its custody.

If, however, for any reason the best interests of the infant should in the discretion of the chancellor require a modification of the judgment, in so far as it relates to the infant, the circuit court has not only ample power under Section 2123, Kentucky Statutes, to do so, but it would become its duty to revise and modify it. Parents should in all cases recognize the fact that the statutes subordinate their interest in the child to the child's interest and welfare.

The chancellor, therefore, may modify this order whenever in his judicial discretion the changed condition of the parties makes it necessary.

Judgment reversed and cause remanded for proceedings consistent with this opinion.