## Salyer v. Salyer.

January 14, 1947.

654

Meade & Johnson for appellant.

Wheeler & Wheeler for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—
Reversing.

Appellant and appellee were married July 13, 1936, and lived together as husband and wife until October 15, 1945. On December 14, 1945, appellant brought this suit against her husband for divorce on the ground of cruel and inhuman treatment, and for the custody of their six year old son. She also prayed for alimony for herself and maintenance for the child. The appellee, by answer and counterclaim, traversed the averments of the petition, and sought a divorce on the same ground alleged by his wife. On final hearing, the court granted appellant the divorce she sought, adjudged her the sum of $500 as alimony and $50 as fee for her attorney, but awarded the custody of the child to the appellee, who was living with his father and mother at Flat Gap in Johnson county about twelve miles from Paintsville where appellant resides. Mrs. Salyer has appealed, and asserts that the sums allowed as alimony and attorney's fee are inadequate, and that the court erred in awarding the custody of the child to the father.

The case presents an unfortunate situation. At the time of the separation appellant was 30 and appellee was 31 years of age. They had lived together more than nine years without friction except that caused by the relations existing between appellant and appellee's mother. The only cause of dissension at any time between them grew out of appellee's insistence that they should live at Flat Gap in a house owned by his mother and located a few hundred feet from the home of his father and mother. When appellee was five years of age his grandfather conveyed to him two small tracts of land at Flat Gap, and on April 28, 1936, 2½ months before his marriage to appellant and shortly after he arrived at the age of 21 years, he conveyed this property to his mother at her suggestion. On the property were two or three dwellings, a store, and a garage and filling station. Appellee

worked as a mechanic in the garage and appellant worked as a clerk in the store, which was operated by appellee's father. She received no wages, but was permitted to take from the store any groceries or other articles needed in her housekeeping. Appellant objected to the constant interference in her domestic affairs by her mother-in-law, who she claimed assumed a dominating attitude from the beginning. This is practically admitted by appellee and his father. Appellee's mother did not testify. Concerning her relations with her mother-in-law, appellant testified in part as follows:

"We married in 1936, and I went to live in his mother's property at Flat Gap, Kentucky, and during the time that I lived there, his mother came in every day, and ordered me what to do. Ordered me where to set my furniture, and when to cook. She went into my home, and got into the dresser drawers and closet, when I was not there. She went to my home and made herself at home. Anything I wanted to do I never got to do it. It had to be her way. And so I stayed there for eight years, nearly nine years, and I wanted to move away. * * * I wanted to live my own life. She wanted to live her life and wanted to live our lives, and also my child's life. * * * She was everything, or at least he thought she was. I told him I would live anywhere, and still would live anywhere except there. I told him I would live anywhere, where we could bring our baby up together, and I pleaded with him all the years we lived there. * * * I didn't object to her being there, if she would leave our affairs out, and let us live our lives, and not interfere daily with what we were doing and wanted to do. And I have not asked him to give his parents up. If we live anywhere else, I would be perfectly willing for him to go there. * * * Naturally I never said anything to his mother out of the way in my life. But when she told something to do, told something that was wrong, he took up for his mother and said she was right."

During the war period appellee worked at intervals at defense plants in Indiana, Tennessee, Virginia, and West Virginia, and appellant remained at their home and clerked in her father-in-law's store except for a period of about five months when she lived in Ashland, Kentucky, where her husband was employed. While in Ash-

land she kept boarders. Appellee gave up his employment in Ashland, and returned to Flat Gap at his mother's request. Finally in the spring or summer of 1945, at the insistence of his wife, appellee rented a house in Staffordsville about eight miles from Flat Gap. He was working at Oak Ridge, Tennessee, at the time and would return once or twice a month and spend the week end with his wife and child. After a few months appellant moved to a house in Paintsville, where her cousin and his family lived. Appellee paid one-half of the rent. He spent a few nights at the Paintsville residence, but resumed his work as mechanic in his father's garage at Flat Gap. He had on deposit in a Paintsville Bank approximately $3,000 and had permitted appellant to draw checks on this account. Some time in November, 1945, he withdrew $2,400, leaving between $500 and $600 in the account, which was attached when appellant filed her divorce action. When he testified, appellee admitted that he had about $3,000 in cash, owned an automobile, and earned $50 a week at his father's garage. Appellant claimed that his earnings amounted to $75 or $100 a week.

The record discloses that for more than nine years nothing occurred to mar the harmony of the married life of this young couple except the unfortunate, and probably well-intentioned, intrusion of appellee's mother in their marital affairs. It is only natural that a wife should desire to be the mistress of her own home, and where members of the husband's family are hostile or unfriendly to the wife or exert an influence tending to disrupt the home, he should establish a home where such influence is at a minimum. The husband is obligated to provide a home, and his choice in the matter is controlling providing it is exercised in good faith. However, he must act within reason, and have due regard for the comfort, health, and happiness of his wife. Hale v. Hale, 240 Ky. 331, 42 S. W. 2d 333; Turner v. Turner, 211 Ky. 7, 276 S. W. 967; Watkins v. Watkins, 202 Ky. 141, 259 S. W. 20. In Hale v. Hale, supra, it was held that the wife was not required to live in the home of her husband's parents where the conditions were unpleasant. It is the generally recognized rule that the duty of a husband to provide a home includes the duty to furnish a home wherein the wife is free from unwarranted inter-

ference from members of his family. Spafford v. Spafford, 199 Ala. 300, 74 So. 354, L. R. A. 1917D, 773; Brewer v. Brewer, 79 Neb. 726, 113 N. W. 161, 13 L. R. A., N. S., 222; Montgomery v. Montgomery, 183 Va. 96, 31 S. E. 2d 284; Verret v. Koelmel, 162 La. 277, 110 So. 421; Horkheimer v. Horkheimer, 106 W. Va. 634, 146 S. E. 614; Harer v. Harer, 153 Minn. 317, 190 N. W. 343; Hoffhines v. Hoffhines, 146 Md. 350, 126 A. 112, 38 A. L. R. 332, annotation on page 338; 17 Am. Jur., Divorce and Separation, section 104; 26 Am. Jur., Husband and Wife, section 16. In Cormier v. Cormier, 193 La. 158, 190 So. 365, 367, the wife was granted a divorce a mensa et thoro. Her chief ground for divorce was the alleged cruelty to which she was subjected due to her husband's persistence in allowing the family home to be located and maintained in proximity to the home of his mother when he well knew that his mother's attitude towards his wife was hostile and unfriendly, and one likely to bring about a disruption of their home. In the course of the opinion it was said:

"It is cruel treatment, under the circumstances existing in this case, to refuse to provide a separate home for one's wife sufficiently remote from his mother's home. Most of the cases refer to the husband's duty to provide a home separate from that of his own family, where his family is unpleasant, unkind or hostile to the wife, but the same reasoning also leads to the unavoidable conclusion that it also is his duty, when he can, to establish his home sufficiently remote from the home of his family so as to remove whatever hostile or unkind influences that this proximity might cause."

We are not prepared to say the evidence in this case warranted an absolute divorce to the wife, but it did warrant a separation from bed and board and an allowance of alimony. In no event has this court power to reverse the judgment of divorce. In view of the appellee's property holdings and his earning capacity, we think that the appellant, upon the granting of an absolute divorce, should have been allowed alimony in the sum of $1,000 and an attorney's fee of $100.

There is nothing whatsoever in the record which reflects in any way upon the character of the appellant or upon her fitness to have the custody of the child. The

658

rule is settled that ordinarily an infant of tender years should remain under the care of the mother in cases of separation such as this. Stupp v. Gross, 301 Ky. 84, 190 S. W. 2d 869; Sowders v. Sowders, 286 Ky. 269, 150 S. W. 2d 903; Wacker v. Wacker, 279 Ky. 19, 129 S. W. 2d 1043. There is no reason to except this infant from the rule. The custody of the child should have been awarded to the mother during the school term and to the father during the summer vacation period, with the right to see the child at reasonable times during the school term. Appellant should be awarded the sum of $50 a month for maintenance of the child during the time he is in her custody.

The judgment is reversed with directions to enter a judgment in conformity herewith.