## Howard v. Howard.

May 14, 1948.

C. W. Hoskins for appellant.

Will C. Hoskins and Wm. Dixon for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This case is one of the more or less regrettable and frequent ones with which we have to deal, it being a contest over which parent shall have the custody of a 15 months old male child, following the separation of its parents.

The original action was one filed in the Leslie circuit court by appellee, the husband, against the appellant, his wife, on May 19, 1945, in which appellee sought an absolute divorce from his wife on the alleged ground of cruel and inhuman treatment for the past six months so as to destroy his peace and happiness. The wife denied the alleged grounds of divorce and counterclaimed by alleging the same ground as to him, but she did not ask for a divorce, but only for the custody of their two children, the youngest being five months old and the elder 15 months old.

Something over 100 pages of testimony was taken pro and con and heard at the trial of the action, and upon submission the then Judge of the Leslie circuit court, the Honorable Roy Helm, granted the husband a divorce, but gave his wife custody of each of the two children. After that Judge Helm was defeated for the office of circuit judge of the district of which Leslie County is a part by Hon. S. M. Ward. The divorce was granted by Judge Helm in the November term, 1945, of the Leslie circuit court. The husband was granted an appeal from that part of the judgment giving his wife the custody of the two children, but he did not perfect it within time and this court upon motion of the wife dismissed it.

At the March term, 1946, of the court the husband entered a motion to modify the divorce judgment by granting to him the custody of the two children, but that motion appears to have been only orally made and the record does not disclose upon what ground he based it. However, Judge Ward overruled it. In the follow-

ing June term of the same year appellee made a like motion in vacation for the same relief, but it also was oral and the record does not disclose the basis thereof. The court, however, dismissed it. During the August term of that year another similar motion was made by the husband seeking the same relief which the court again overruled, but modified the original judgment entered by Judge Helm allowing the husband "to have custody of both children the last week of each month."

With unyielding tenacity the husband again moved the court in vacation at Hazard, Kentucky, for a modification of the judgment so as to give to him the custody of the elder child, Wayne Howard. That motion was sustained and the judgment modified as requested, and directed that the husband pay to the wife $10 per month for the maintenance of the younger five-month old child. From that judgment appellant prosecutes this appeal, insisting that she is entitled to the custody of both children and to be allowed an additional $10 per month for the maintenance of the elder one.

The only evidence in the record upon the hearing of the various recited motions by the husband—if indeed any at all were heard—is that taken and introduced on the trial of the divorce action, consisting as we have said of about 100 pages of the record. The substance of the salient facts are: That for the first two months of the marriage of the litigants they resided with the parents of the wife, after which they took up their abode with the parents of the husband. At that time the father of the husband was dead or divorced from his wife, Siller Howard. In the beginning of 1943 one Arnold Muncy appears to have taken up his abode in the home of the widow Howard and they began a career of cohabitation and living together which lasted until about the time of the separation of appellant and appellee. It appears to have been circulated in the community concerning their relationship and the two journeyed to the city of Harlan on September 4, 1945, where they procured a marriage license from the County Clerk of that county and were married by F. M. Meadows, the County Judge of the county, on that day.

In giving her deposition Mrs. Muncy, nee Howard, appellee's mother, testified that she and Muncy were

married in 1943. She was then asked if she had the marriage certificate when she answered in the affirmative and counsel asked her to produce it, which she did, when it was discovered that the figure "5" of the year of their actual marriage had been so altered and changed as to give the appearance of the figure "3" which would correspond with the date at which the relationship between her and Muncy began. Counsel then asked her to file this certificate as an exhibit with her deposition which she peremptorily refused to do.

After entering the home of appellee's mother the appellant soon became dissatisfied with the treatment she received at the hands of apparently all of the members of that family. They were more or less vitriolic toward her and she began an effort to persuade her husband to acquire a home for themselves and the two infant children. Eventually he was tendered by one Roark, a neighbor, a vacant tenant house on a nearby tract of land that he (Roark) owned, but only as a tenant at will. It appears from the evidence that it was far from being equipped for a suitable home, and the wife objected to it and still insisted that her husband provide better living quarters which he never did. The wife then left the Muncy residence taking with her her younger child, leaving the elder child temporarily in the home of the Muncy's. For some cause, not disclosed, she failed to get permanent possession of the elder child, and he appears to have remained in the custody of Mrs. Muncy, from which it appears that this litigation in reality is mainly between the appellant and her mother-in-law.

Mrs. Muncy gave two depositions at the taking of the first of which appellant's counsel was not present and the witness was cross-examined by appellant who asked witness: "Why do you think my home is not sufficient for the children?" The answer was: "Because you have two crippled children (her brother and sister) there and you can't care for them like you should." (Our parenthesis). Reference will be made later in this opinion to the crippled children. Mrs. Muncy testified to a number of trifling incidents relating to the suitability of appellant for the custody of her children, none of which throw but little, if any, light on the character and disposition of appellant, or for that matter

on her ability and suitability to care for and rear her elder child equally as well as could be done by her mother-in-law.

Appellant is the daughter of John Noland and wife who live on a farm owned by Mr. Noland, a part of which is cultivated. His residence is a house of only three rooms, in one of which he and his wife sleep; one room is occupied by a daughter and a son, 27 and 29 years of age respectively, whilst appellant and her young daughter occupy the other room. If she were awarded the custody of Wayne Howard, her elder child, there would still be space for his sleeping quarters in the same room with his mother and young sister.

Mr. Noland testified that he was supplied with working animals, hogs, chickens, cows, etc. and that he was employed as an engineer at a sawmill plant the earnings from which, with the produce from his farm were sufficient to meet the reasonable necessities of the entire family, including appellant and her two children.

The two children of the Nolands referred to are and have ever been physically handicapped so that they are unable to walk alone and one of them is somewhat mentally deficient, but there is no evidence to show that they possess any violent disposition or that they do not conduct themselves in a proper manner. The only burden their condition entails consists in serving them their meals, and helping them to move around which appears to be attended to by their parents. The life of the Noland family appears to be happy, largely in excess over that of the Muncy family.

Some of the witnesses, including Mr. Muncy, testified that about the time of the separation of appellant and appellee when he was insisting on retaining the custody of the children appellant said to him that he was not the father of the elder child, Wayne, and therefore he had no claim to his custody which appears to have been spoken, if at all, (appellant denying it) when she was extremely angered and in a disturbed condition of mind which the attitude of the members of the Muncy family, including her husband, was calculated to produce. She stated in giving her testimony that appellant was the father of Wayne Howard, although he was born only five months following the marriage of

the two litigants, and appellee failed in his testimony to deny that he was the father.

Some witnesses testified that on at least one occasion appellant at a dance given in the house that the witness, Roark, allowed them to occupy at will, became considerably intoxicated, but it also indisputably appeared that the appellee was in a like condition and possibly to a greater extent than was appellant. In that condition appellee, apparently attempting to dance with his wife, stepped on her foot. They were dancing on the front porch of the house and when he did so she in jerking loose caused him to fall from the porch, which fact is paraded and exaggerated as one of the acts of cruelty with which appellant is charged.

This opinion could be greatly extended were we to undertake to recite the various charges and countercharges to which each party testified in giving their depositions, but in viewing the testimony as a whole we are forced to conclude that the cruelty of the husband toward his wife exceeded that of hers toward him, if any. He failed to provide a suitable home for his family in defiance of repeated requests of appellant by which she was forced to continue to reside with the Muncy family and to rear her children, if she could obtain no relief therefrom, in the atmosphere of that home to which she vigorously objected and constantly protested. Such failures on the part of the husband have frequently been held by this court as legal cause for a wife to abandon her husband as did appellant in this case.

It is universally known that a mother's love for her children far exceeds that of any other human relationship. Such affection produces the will and determination on the part of the mother to exhaust, if need be, every effort of which she is capable of performing to rear her offspring and to give it such advantages as she can supply in equipping it for good citizenship for later life. That consideration alone, however, is not permitted to outweigh the welfare of the child in allotting its custody. In determining the issue as to the proper custody of a child as between mother and mother-in-law, the poverty of the mother does not ipso facto create legal ground for refusing her the custody of her

infant children of tender years. Sowders v. Sowders, 286 Ky. 269, 150 S. W. 2d 903; Rietmann v. Rietmann, 168 Ky. 830, 183 S. W. 215, 216; Grow v. Grow, 270 Ky. 571, 110 S. W. 2d 275. See also KRS section 403.070. Under somewhat similar facts we reached the same conclusion in the case of Creech v. Lewis, 307 Ky. 799, 211 S. W. 2d 812, and not yet published.

Another fact of considerable importance in determining the question here involved is that children of the same parentage should live together as members of the same family and not be separated whereby their natural affection for each other becomes dimmed and sometimes entirely fades away, thereby losing the benefits of constant association as nature intended.

The only outstanding fact to prove appellant's unfitness (if it does produce that effect) to have the custody of her two children is her transgression of becoming pregnant before she was married. She was then in her teens not having arrived at the age of sound discretion and probably was unable to resist the importunities of her seducer. There is nothing to show that she has repeated that offense, or shown any inclination to do so, and many of her neighbors testified as to her good reputation and standing in the community, although some testified to the contrary. Cross-examination, however, developed that their testimony was based primarily upon the offense above referred to.

The task imposed upon the court in cases like this is an exceedingly unpleasant one. We can only arrive at our determination from the material that the litigants bring to us howsoever knotty and inferior it may be. The only aid outside of that material that we may consider is the weakness and fallibility of human nature. Guided by such directing signals we have concluded that the court erred in entering the order appealed from, since we are convinced from the testimony as a whole that the involved child should now be in the custody of his mother and especially so if appellee is not its father, in which case he could assert no claim to the right of its custody. Appellant is the mother of both infants and other requirements being equal she has the superior right to their custody until future conditions deprive her of that right. The husband should

contribute to the maintenance of each child, and be permitted to visit them at reasonable times, which we think would be met by allowing him to see them as much as one day every two weeks, beginning at 6 a. m. and ending at 6 p. m. and that he should contribute to his wife $20 per month for their maintenance and necessities.

Wherefore, the judgment is reversed with directions to set it aside and to enter one in conformity with this opinion.