## Paul v. Paul.

May 28, 1948.

Joe S. Feather for appellant.

William L. Rose and C. B. Upton for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Appellant and appellee were married in 1936 in Whitley County and thereafter resided in Jellico, Kentucky. They separated November 30, 1945, when the wife left the home they were occupying and went to the home of her father located in that part of Jellico which is in Tennessee. She carried with her the three infant children that had been born of the marriage, their ages being 8 years, 5 years and 21 months respectively. The home they had been occupying in* Kentucky belonged to the father of the husband free of rent, but the evidence does not disclose what type of building it was.

On December 28, 1945, some two months after the separation, appellant filed this action against her husband seeking a divorce and the custody of her three children. She alleged in her petition that "for a period of more than six months last passed the defendant has habitually behaved toward her in such a cruel and inhuman manner as to indicate a settled aversion toward her, and such as *to destroy permanently her peace and happiness" which was without fault on her part. She furthermore alleged that she was "a fit and proper person to have the permanent care, custody, control and possession, and that the defendant is an unfit person to have such care, custody, control and possession."

Defendant in his answer filed January 9, 1946, admitted the marriage, the birth of the three children, their ages and the separation, but denied the grounds relied on by plaintiff in her petition upon which she sought an absolute divorce or the custody of the children. He then alleged that "he is a very sick man and is unable and has been for many months unable to do hard manual labor; and that he is suffering with a severe ulcerated condition of the stomach and has not worked for over

seven months." He then alleged that plaintiff's petition should be dismissed and the plaintiff compelled to return to his home with his children, but if she should decline to do so that the court adjudge to him the custody of the children; however, he in that pleading neither alleged grounds for, nor asked for a divorce to be granted him.

On September 1, 1946, the court entered an order on an application of the plaintiff allowing her $30 per month for the support of herself and her infant children to continue until the further orders of the court. On March 21 of the same year an order was entered allowing appellee "at reasonable times and places" to visit his children, and prescribed conditions under which that privilege should be exercised. On September 17, 1946, defendant filed an amended answer in which he alleged that since the separation the plaintiff had behaved toward him in such cruel and inhuman manner as to indicate a settled aversion toward him and to destroy his peace and happiness as to entitle him to a divorce. He also alleged in that pleading that "this plaintiff has been guilty of such lewd and lascivious conduct as proves her to be unchaste." He therefore prayed that he obtain a divorce against her.

On October 1, 1946, defendant took the depositions of himself and of his parents, the substance of which was that plaintiff had not complied with the above order of March 21, 1946, and that plaintiff and her parents, with whom she was living, had manifested a hostile attitude against him and obstructed his right to see his children as prescribed in the above order, but none of those witnesses gave testimony supporting the alleged cruel and inhuman treatment of plaintiff toward defendant prior to the separation, and in support of that ground defendant himself testified that his alleged cruel treatment consisted in the fact that his wife had separated from him and carried with her the children.

Prior to the taking of those depositions the attorney for the plaintiff, for some cause undisclosed in the record, withdrew from the case and she was not represented in the taking, nor had she been given any sort of notice that those depositions would be taken, though notice could have been served by one over 16 years of

age and not an officer, under the provisions of section 626 of the Civil Code of Practice. However, they were filed in the case by the officer who took them. Defendant in giving his testimony was asked: "Did you give her any cause or reason to leave you?", to which he gave the very indefinite answer: "No, not to my knowledge, I didn't." Neither of those witnesses either directly, indirectly, remotely or otherwise testified to any fact looking to the establishment of the slander charge made by defendant in his amended petition, that his wife was "guilty of such lewd and lascivious conduct as proves her to be unchaste."

On January 25, 1947, defendant gave his second deposition also without notice to his wife, and on January 28, 1947, the cause was submitted also without actual notice to her and the court entered judgment giving appellee the control and custody of all three of the infant children and granted him an absolute divorce. On March 18, 1947, after learning of that judgment, appellant by her attorneys—apparently employed after the entry of that judgment—gave appellee notice that she would on March 22 enter a motion to redocket the case and to set aside that part of the judgment allowing the custody of the children to appellee, which she did pursuant thereto. The court redocketed the case but overruled her motion to set aside the order granting to appellee the custody of their children, and from the latter order alone the appellant prosecutes this appeal.

On May 14, 1948, we delivered an opinion in the case of Howard v. Howard, 307 Ky. 452, 211 S. W. 2d 412, which involved the question as to which one of the two parents should have the custody of their children upon a judgment divorcing them. In that case the controversy was presented as a question between the parents, yet his mother, with whom he was residing after the separation, exhibited more interest in his behalf to obtain the custody of his children than did he. We therefore said in that opinion that the controversy might be considered as one between the wife and her mother-in-law. In discussing the applicable law to such controversies, which have in recent years become alarmingly frequent, we said:

"It is universally known that a mother's love for

her children far exceeds that of any other human relationship. Such affection produces the will and determination on the part of the mother to exhaust, if need be, every effort of which she is capable of performing to rear her offspring and to give it such advantages as she can supply in equipping it for good citizenship for later life. That consideration alone, however, is not permitted to outweigh the welfare of the child in alloting its custody. In determining the issue as to the proper custody of a child as between mother and mother-in-law, the poverty of the mother does not ipso facto create legal ground for refusing her the custody of her infant children of tender years. Sowders v. Sowders, 286 Ky. 269, 150 S. W. 2d 903; Rietmann v. Rietmann, 168 Ky. 830, 183 S. W. 215, 216; Grow v. Grow, 270 Ky. 571, 110 S. W. 2d 275. See also KRS section 403.070. Under similar facts we reached the same conclusion in the case of Creech v. Lewis, 307 Ky. 596, 211 S. W. 2d 812.

"Another fact of considerable importance in determining the question here involved is that children of the same parentage should live together as members of the same family and not be separated whereby their natural affection for each other becomes dimmed and sometimes entirely fades away, thereby losing the benefits of constant association as nature intended."

The prevailing rule applicable to such cases has been so frequently applied by this and other courts as to require no fortification by listing either domestic or foreign cases to the same effect, other than those referred to in the above excerpt.

The home of infant children is the place where the foundation of future worthy citizenship is shaped and much depends on how that home is conducted as affording opportunities for building of character extended to the infant child by those having charge of it. In a sense courts are guardians of such unfortunate ones, whose homes have been destroyed by the separation and divorcing of parents, and their task in performing their supervisory functions in such cases is an extremely delicate one. In discharging that duty they should be furnished with the complete facts as to their respective fitness, qualifications and ability so as to determine which

of the two contestants is best fitted to discharge the task of rearing the involved infants.

The plaintiff in this case took no depositions and the judgment appears to have been rendered without her personal knowledge and when she had no attorney representing her. We do not undertake to determine which of the two should be given the custody of the children. What little is stated in the husband's proof —even if his wife had been given notice—affecting the right of either party to their custody is insufficient to correctly determine which one of the litigants should be adjudged the custody of their children. We have therefore concluded that the order giving to the husband the custody of his three infant children was made without any proof of his superior right thereto.

In determining such questions courts should not be influenced by slight failures in pursuing technical rules of practice by either parent because of ignorance oversight or for any other reason, but should require the contestants for the custody of such infants to develop the complete facts and then adjudge the custody to the one as will best subserve the interest of all parties concerned.

Wherefore, the judgment appealed from is reversed with directions to set it aside and to give each litigant reasonable opportunity to take and present their proof upon the involved issue and to then submit the case for a determination of the issue as to the custody of the children, and if given to the wife then for allowances for their maintenance and support with opportunities for appellee to see and be with them as may be appropriate.