## Travis v. Travis.

March 8, 1940.

V. H. Jones, Judge.

Richardson & Redford and Terry L. Hatchett for appellant.

J. Wood Vance and Geo. J. Ellis, Jr., for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

The unfortunate controversy presented to us grows out of the inability of two young married people to bear any longer the matrimonial yoke; not so unfortunate, perhaps, as to them, but to an infant son who is just approaching school age, and who in all probability will spend his young life deprived of an association with agreeable parents in a congenial home.

The father and mother were married in 1933, at a time when the appellant was sixteen or seventeen years of age. They lived together, not happily, for about six months, when she went to the home of her parents, remaining there until after the birth of her child. There were several separations, and attempts at reconciliation which failed, and after the last separation in the early part of 1938, appellant sought an absolute divorce on the grounds that the husband was an habitual drinker, wasted his estate, failed to provide for her and the child, and was guilty of cruel treatment to such an extent as to indicate a settled aversion.

The appellee denied the charges, and by way of counterclaim sought divorce on the grounds of abandonment, though failing to allege the existence of the separation period for the length of time required by law. Kentucky Statutes, Section 2117.

In appellant's petition she sought to have the court award her sole custody of the child, and likewise asked

$60 per month alimony and support for the infant. Appellee's counterclaim denied (generally) appellant's assertion that she was a fit and he an unfit person to be awarded the custody, and alleged affirmatively that he lived at home with his mother and father, who had a comfortable and respectable home, and that "he is able to provide and support said child and furnish it a good home, with good environment; to send it to school and church," and he asks for the custody and care of said child "with his mother and father, at least one-half the time." A reply made up the issue.

After hearing a great volume of proof the court entered a decree granting absolute divorce. It was further ordered that appellee pay appellant $7.50 per month, beginning April 1, 1939, continuing until the court should, if necessary, further order.

As to the child's custody the court decreed that appellant should have such during the terms of school, and appellee to have custody during the vacation. Appellee was adjudged to pay to appellant $2.50 per week for support of the child while in the keeping of the mother, and was ordered to maintain the child absolutely while in his care. Each party was given the right of reasonable visitations, regardless of which parent had custody.

The appeal is prosecuted from the decree, except in so far as appellant was adjudged absolute divorce, and the awarding to her of personal property; stated succintly, appellant seeks to have us award to her sole custody, on the ground that the father is shown to be unfitted for proper paternal care, and to increase the chancellor's allowance for alimony and support of the infant. There is no cross appeal, but appellee is contending that the proof is such as shows him (and his father and mother) to be highly suitable for the purpose, and that appellant is not so situated that she can properly take care of the boy. Further, that his financial condition and earning power is such that the sums awarded by the court are as much as he can well bear.

A great deal of proof quoted in the briefs is such as related mainly to the question as to whether or not appellant was entitled to a decree of divorce. However, it is to be and has been considered, on the question of custody of the child. And we might now say, that if it

were not apparent from the whole record that the grandparents were the custodians in fact, we should be much inclined to hold that the father should have only visitation privileges. However, the court, as is customary and proper in cases of this sort, has retained and will no doubt retain control, and make such orders as may in the future, redound to the welfare of the child.

It is to be regretted that there was not more enlightening proof on the question of the ability of appellee to earn and pay. The only proof adduced was that of the father of appellee, and appellee. Both were rather evasive, and their proof unsatisfactory, but it is all we have before us on this question. The chancellor has it in his power to inquire further into this matter at any time he so chooses, upon a proper showing.

From the proof it appears that appellee, who drives a truck, and assists his father around his place, earns very little of what he calls "money," in all about $30 per month from all sources. There is a vague bit of proof on his part that he has a sort of interest in the store. This appears doubtful, but in fairness to appellant and the boy, this might have been further developed.

There is no showing by appellant that would justify the conclusion that he was earning any more than was stated. It seems admitted that he owns no personal property—unless it be the truck, and he owns no real estate; not even a home. It is, of course, admitted that he is a strong, able-bodied young man, and the proof shows at least a part inclination to waste his money in an uncommendable way. The proof indicates, particularly that of the father and mother of appellee, that there is likelihood that this picture is not as bad as it was painted on the divorce trial, and that there may be continued improvement.

On the showing made by the parties, and under all the facts, as far as developed, we are not inclined to disturb the finding of the chancellor in this respect.

Counsel for appellant in brief agrees with our above stated conclusion as to actual custody, since it is stated that the granting of part time "custody of the child to the father, has the effect of granting the custody thereof to the parental grandmother and grandfather." As we stated, were it otherwise we might undertake to inter-

fere on behalf of the child. As a general rule the mother is entitled to the custody of an infant of tender years, on a showing that she is able, financially and otherwise, to give it proper care and attention. At the time of the trial she was still in attendance in the high school, though she said she would finish "about Christmas." Her proof shows that she is dependent upon her parents for her support. Their financial condition is not shown. For all we know it might be too much of a burden on them to have the support of herself and (in part) of the child.

There is more than ample proof to the effect that the child's paternal grandparents are amply able to aid in the child's support and to give it proper care, and they evidence a desire to have its custody during the time when not with its mother. Such an intention was not shown to exist on the part of the maternal grandparents, nor by the mother for them.

Our rule is that if there be no more than a doubt as to the chancellor's conclusions, we should affirm the judgment. The chancellor usually is in a better position to decide on matters of this sort than is this court, sitting at a distance from the immediate neighborhood. We also realize the extremely difficult task the chancellor has to perform in cases when such matters are presented; ordinarily in such cases, and as no doubt was done in this, the court exercises a sound judicial discretion.

Our view of the whole matter is, that under the proof as adduced, the chancellor did the best that could have been done, and may we repeat, that under changed circumstances, should such arise, the court is in duty bound to look to the welfare of the infant.

Judgment affirmed.