## Napier v. Napier.

May 9, 1941.

Claude Caudill for appellant.

Oscar P. Bond for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On December 13, 1937, the appellee and plaintiff below, Ethel Napier, and the appellant and defendant below, A. C. Napier, were married. They lived together for a short while when they separated, and on June 17, 1938, plaintiff filed in the Floyd circuit court this equity action against her husband, seeking a divorce from him and alimony for her support. Up to that time no children had been born of the marriage, but plaintiff was then recently pregnant and in due time, and while the suit was pending, the child was born. After its birth she sought, by proper motion in the action, an allowance for the support, caring for and maintenance of the child—the custody of which she asked be given to her. Defendant resisted all the relief sought by plaintiff's petition by denying her alleged grounds for divorce, and averring that she was entirely to blame for the separation which was produced by no fault of his. He resisted the payment to her of any alimony, and further alleged that she was an improper person to have custody of the child, for which reason he asked that it be given to him, which, when done, would remove plaintiff's right to any allowance for its maintenance and support, that burden then devolving upon him. Following pleadings and motions made the issues, and upon final preparation, the cause was submitted to the court, followed by a judgment giving plaintiff a divorce from defendant, and also awarding her the custody of her infant child, and directed defendant to pay to her, for maintenance of the child, the sum of $10 per month.

In the meantime—and while the action was pending and being prepared for final submission—a settlement of the plaintiff's claim to alimony for herself appears to have been entered into, but which was clearly inadequate and which defendant failed to comply with. Nevertheless (though making some complaint thereafter to correct the judgment in that respect) plaintiff appears to have finally accepted that settlement which was made a part of the judgment and no objections with reference thereto is made on this appeal. That judgment was rendered on January 14, 1939. For sometime following its rendition defendant paid to plaintiff the monthly allowances for the support of her infant child, but he then ceased to do so, and on September 30, 1939, he was delinquent in the total sum of $40. On that date plaintiff asked for a rule against him to show cause why he should not comply with the judgment of the court. The rule was issued, and in response thereto defendant averred his financial inability and attempted to rely on other equally feeble defenses. He then moved for a modification of the judgment theretofore rendered so as to take from plaintiff the custody of their child and give it to him—he alleging that he was the proper one of its parents to have its custody and that plaintiff, on account of her poverty, and her alleged immorality, was disqualified and unfit to have charge of or to in any manner rear it.

Plaintiff's response to that motion denied the alleged grounds therefor, and an order was made allowing each party to take their proof on both of the motions by affidavits. They each later rolled into the courthouse about a wheelbarrow full of affidavits, swelling the record to two volumes. Before the motions were submitted on that character of testimony (which is hereby condemned) plaintiff filed her affidavit for the then presiding judge (now deceased) Hon. John W. Caudill, to vacate the bench and to procure a special judge to pass upon the merits of the respective motions of the parties. That motion was overruled and, perhaps, properly so, because it was not made at the proper time, notwithstanding the grounds therefor as set out in plaintiff's motion were not altogether without merit. Upon final submission the court sustained defendant's motion to modify the original judgment, and on December 16, 1939, re-adjudged that defendant pay to plaintiff the sum of

$35 in satisfaction of all arrearages unpaid under the first judgment (but which at that time amounted to much more than the original $40.00 first claimed by plaintiff), and in addition thereto the court gave custody of the infant child of the parties to each of them for one-half the time, and provided that while it was in the custody of plaintiff, its mother, defendant should pay to her the sum of $5 per month for its maintenance. It was furthermore adjudged that when the child arrived at school age defendant should have its custody and control during the school months, but that plaintiff, its mother, should have its control during vacation periods during which time defendant should pay to her for its maintenance the same sum of $5 per month.

At the end of the year 1939 the judge (Hon. John W. Caudill) who had presided in the cause from its beginning retired from office, and Hon. Henry C. Stephens, Jr., assumed its duties—he having been elected to that office at the regular election in 1939. On the 17th day of February, 1940, plaintiff, after notice given, moved the court to modify the last judgment rendered by Judge Caudill, and to restore the original one rendered by him, which, after more or less extended hearing, the court sustained and reinstated the original judgment rendered by Judge Caudill, from which defendant prosecutes this appeal.

From the foregoing recitation, it will appear that at the time Judge Caudill rendered his last judgment, modifying his former one, the' infant child was barely one year of age, if, indeed, it was that old, and it was but slightly older at the time Judge Stephens rendered the judgment appealed from. Not only was it on each of such dates a mere infant, but the proof shows that it was afflicted with a hernia plus some other afflictions thus rendering it a more or less invalid and which entailed upon the one having it in charge much more additional care than if it had been healthy and stout. But, eliminating all such afflictions, the case would then present the question as to which one of the parents should have the control of their infant child below two years of age? We unhesitatingly conclude that no argument is needed —and especially in view of Section 2123 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes—in support of the findings of the first judgment rendered by Judge Caudill that plaintiff as the mother of the child

was the proper one to have its custody at least during its extreme youth. Such judgments are always based upon the facts as they exist at the time the judgment is rendered.

The proof shows that after the rendition of the first judgment by Judge Caudill defendant took into his household his second wife, who was the one immediately preceding plaintiff, and whom he married after being divorced from his first wife. The testimony adduced also created grave doubt as to whether plaintiff had ever been divorced from his second wife at the time he married plaintiff, although a judgment to that effect from the Knott circuit court finally found its way into the record; but it was smeared with the suspicion that no such judgment was ever actually rendered. But, however that may be, defendant lived and cohabited with his second wife for sometime after plaintiff obtained her divorce from him, and it appears that he then remarried his second wife after suspicious rumors relating to their cohabiting together became circulated. They each had children and lived in the home owned by defendant. His business was that of operating a pool room in the town of Garrett in Floyd County, and also running a barber shop in the same town, and the proof shows that, at least, his gross income from the two operations was between $400 and $500 per month, notwithstanding he resisted the $10 monthly payments adjudged against him by Judge Caudill because of his financial inability to make them. Such facts clearly indicate that the sum allowed by Judge Caudill for the maintenance and support of his child—the custody of which he adjudged to plaintiff, its mother—was grossly inadequate, and the judgment was also erroneous in not allowing plaintiff alimony for herself, since the proof shows that she is entirely dependent upon her labor for support; but there is no cross-appeal from such parts of the judgment.

A most strenuous effort was made by defendant, through proof taken by affidavits alone, to convict plaintiff of immorality, but which she contradicted by testimony taken and prepared in the same way. Defendant's testimony in that respect was an effort to show that after plaintiff obtained her divorce he purchased a restaurant for the consideration of $300 which he gave to plaintiff in settlement of her claim for alimony for which she was insisting in her petition, and which settle-

ment she appears to have accepted, but defendant never paid but $175 on the purchase price of the restaurant. Nevertheless plaintiff and her father undertook to operate it. Defendant's proof on the question of his wife's morality was directed to the character of house which plaintiff and her father operated in running the restaurant that defendant gave to her. Her proof, furnished by affidavits, was to the effect that she was fairly well educated, attended church and Sunday school, and bore a good reputation in the community. But the same character of proof she proved that many of the affiants making the affidavits relied on by defendant were persons of bad reputation for truth and veracity, as well as for morality. Among the witnesses stoutly sustaining the reputation of the defendant was the postmaster of the town of Garrett. We, therefore, conclude that the entire proof offered in the case—though made under an agreement by ex parte affidavits—failed to prove plaintiff's bad character or to in any manner disqualify her as a proper person to have charge of her extremely youthful child.

But, if the testimony as a whole had shown otherwise while the restaurant was operated, then the record discloses that plaintiff and her father sold it and removed from the town of Garrett to a place in the country not far from Prestonsburg, and at the time of the rendition of the last judgment herein (the one appealed from) no such immoral environment surrounded plaintiff, as defendant attempted to prove when she was operating the restaurant in conjunction with her father.

It would scarcely appear necessary to cite cases showing the right of the court, in the character of cause here presented to modify its judgment from time to time so as to conform to the existing facts, and which is imperatively required with reference to the welfare of the infant involved by the provisions of Section 2123, supra, of our Statutes. A case involving facts as completely on all fours with those of this one as could well be is Sowders v. Sowders, decided by us on April 29, 1941, and appearing in 286 Ky. ..., ... S. W. (2d) .... In that opinion many prior ones from this court are cited showing the right of the court to modify the character of judgment here involved at any time so as to conform with the existing facts, and to better provide for the involved infant, some of which are Shehan v. Shehan, 152

458

Ky. 191, 153 S. W. 243; Rietmann v. Rietmann, 168 Ky. 830, 183 S. W. 215; Riggins v. Riggins, 216 Ky. 281, 287 S. W. 715; Grow v. Grow, 270 Ky. 571, 110 S. W. (2d) 275; Wacker v. Wacker, 279 Ky. 19, 129 S. W. (2d) 1043, and Travis v. Travis, 282 Ky. 215, 138 S. W. (2d) 336. Many others are cited in the opinions in those cases, and for which reason the list need not here be increased.

There is no proof that defendant ever voluntarily contributed any amount whatever to the maintenance and support of his invalid infant child. The only contribution he ever made for that purpose was through the coercive processes of the court, and one of the grounds urged by him why he should be relieved of that burden is that on some occasions plaintiff invested the insignificant allowance defendant was coercively paying to her, in the purchase of food or other household expenses and not in paying for the personal necessities of her infant child. That argument, even if true and wrongfully persisted in by plaintiff, may not be corrected by the character of motion under consideration. Moreover, in order for the child to be properly nurtured and maintained by its mother, it is necessary that she also be maintained, and if, perchance, a fractional part of the allowance for the benefit of the child was devoted to the procuring of necessities for its mother, the child was thereby indirectly benefited and the argument so made does not even point to a defense, much less constituting one.

In view of the facts we have related, defendant, instead of having been prejudiced by the judgment appealed from, should congratulate himself upon the easy burden which it imposed upon him therein—to say nothing about nature's appeal that should move him in the desire to administer to the maintenance and care of his afflicted child in its extreme infancy. Under the principles upon which this opinion is based the court, if conditions should hereafter change, or if it should appear that the meager allowance for the maintenance of the child was insufficient for that purpose, may at any time, upon notice by either party, modify the judgment so as to conform to the then existing facts and the rights of the parties thereunder.

Wherefore, for the reasons stated, the judgment is affirmed.