## Duncan v. Duncan.

Feb. 16, 1943.

Dodd & Dodd, Edward A. Dodd, and W. S. Heidenberg for appellant.

Wm. S. Kammerer and Davis W. Edwards for appellee.

Opinion of the Court by Judge Rees—Affirming.

Charles Y. Duncan and Anne Louise Munson were married in June, 1933, and separated in February, 1940. Three children were born to the union, Charles Y. Duncan, Jr., now 8 years of age, Anne Franchot Duncan, now 5 years of age, and Edgar Munson Duncan, now 3 years of age. On February 17, 1940, Anne Louise Munson Duncan instituted an action for divorce against her husband, Charles Y. Duncan, on the ground of cruel and inhuman treatment, and asked that she be awarded custody of their children and that she be granted alimony for herself and maintenance for the children. In an amended petition she alleged as an additional ground for divorce that defendant had a confirmed habit of drunkenness of not less than one year's duration, accompanied by the wasting of his estate and without any suitable provision for the maintenance of his wife or children. The commissioner to whom the case was referred, after hearing the testimony, recommended that the plaintiff's petition and amended petition be dismissed; that she be given custody of the children, the defendant to have the privilege of seeing them at reasonable times; that defendant be required to pay the sum of $40 a month to the plaintiff as maintenance for the children and to pay all court costs, including an attorneys' fee of $500. The chancellor disregarded the commissioner's recommendation that the petition and amended petition be dismissed, and rendered a judgment granting to the plaintiff an absolute divorce from the bonds of matrimony with the defendant. He also decreed that the house and lot held in the joint names of the parties should be conveyed to the plaintiff. This property had been purchased about 18 months before the separation, and was heavily mortgaged. Mrs. Duncan had made substantially all of the payments on the purchase price. The custody of the three infant children was awarded to the plaintiff, the defendant, however, to have the right to visit them on Saturday of each week from 2 o'clock p. m. until 6 o'clock p. m. An allowance of $60

a month as alimony and as support and maintenance of the children was granted to the plaintiff, and an allowance of $500 for her attorneys was also made. The defendant has appealed, but, as we interpret the brief filed in his behalf, he seeks to have reversed only that part of the judgment which awards to the plaintiff the custody of the three children.

At the outset we are confronted with a preliminary question of practice. On November 6, 1942, appellee filed in this court a paper styled ''Petition,'' accompanied by an affidavit. In the petition appellee prayed for an order in the case then pending on appeal granting her the right to move to the state of Pennsylvania together with her three children. In the affidavit filed with the petition the reasons for the request were set out. The appellant filed a motion to strike the petition and affidavit, and the motion was passed to the merits. The procedure adopted by appellee is, in effect, an effort to obtain a judgment affecting the custody of the children based on proof produced for the first time in this court. An application for a change or modification of an order relative to the care and custody of children based on new evidence must be made to the circuit court. Duncan v. Burnett, 292 Ky. 269, 166 S. W. (2d) 419.

The motion to strike the petition and affidavit is sustained.

Appellant concedes that so much of the judgment as grants appellee an absolute divorce is final and may not be reversed, but he insists that the evidence was insufficient to warrant the granting of a divorce to appellee, and he asks for a close scrutiny of the record by this court since all the evidence introduced has a bearing on the question as to whether appellant or appellee is the proper person to have the custody of the children.

There are twelve volumes of pleadings, exhibits, and testimony. The chancellor wrote an exhaustive opinion showing that he had read the record carefully and had considered thoroughly every issue in the case. Numerous witnesses were introduced by each party, but the crucial fact upon which the correctness of the chancellor's judgment turns was known only to appellant and appellee. Her testimony concerning certain acts of appellant, relied upon by her as constituting cruel and inhuman treatment, was categorically denied by him. If

her testimony was true she was entitled to a divorce and certainly to the custody of the children. There is nothing in the record tending to show that she is an unsuitable person to have the custody of her three young children nor is there anything reflecting on her character unless it be assumed, as claimed by appellant, that she committed perjury at the trial. The chancellor, after a careful consideration of the record, was unwilling to say that her testimony was false. We likewise have read the record carefully and we are unable to say the chancellor erred. On account of the scandalous nature of the charges, we shall neither set out the evidence nor attempt to analyze it. To do so would serve no useful purpose. The following from Burke v. Burke, 291 Ky. 743, 165 S. W. (2d) 545, is appropriate here:

"The rule of law that the welfare of the child is the controlling consideration in such cases is not disputed, and a recitation of the facts established by the testimony, which rendered the Chancellor's present application of that rule inevitable, could only serve to satisfy the curiosity of the inquisitive and embarrass the innocent when they reach maturity. Moreover, the Bar should not be burdened with reports of cases which neither announce principles of law nor illustrate their novel application."

The judgment is affirmed.