# Gray v. Gray.

June 8, 1943.

M. C. Redwine for appellant.

R. R. Craft for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming in part and reversing in part.

In a suit in which she charged appellant with cruel and inhuman treatment, the court in April 1936 granted appellee absolute divorce. She was given custody of four children. It was adjudged that the husband should pay to the wife for her and the children's support $30 per month. In April 1943 appellee moved the court to increase the monthly allowance to $60 per month, be-

cause since the entry of the judgment the children had become older, and unusual conditions had greatly increased living costs. It was suggested that the husband, by reason of better employment, was enabled to pay more. He had remarried, but there were no children of the marriage. She stated that she was working, though her earnings were not sufficient to support herself and family.

The husband responded, denying the averments in a general way, and charging that the children, or some of them, were not happily situated in the mother's custody; were not being properly trained, and that one, the oldest girl, had been for the past year in a convent. He asserted that he and his present wife were prepared to take the children and provide them with a good home. He prayed for such relief as he "might show himself entitled to have."

The cause was submitted on the motion, response, and proof. The court adjudged that the custody of the children should stand as in the original judgment; that the husband should pay $15 per week for support, and that the eldest girl be sent to St. Euphrasia training school at Fort Thomas, where she was in 1942, for further training. It was directed that the boy "be found employment as soon as possible."

Appellant insists that the court went far afield in doubling the former allowance, because it is beyond his ability to meet the exaction; that the proof shows that the mother is lacking in ability to care for and control the children properly. Since the date of the first judgment the mother has had custody of the four children, three girls and one boy. At the time of trial the boy was thirteen; the girls respectively, fourteen, eleven and eight, all of tender years when custody was awarded to her. It is fair to say that appellant has well met his payments, being in default only a few times, and during the entire period had under the court's order paid about $1,350, some payments at times when his wage was low. The question as to whether the chancellor properly doubled the former allowance depends chiefly upon the present financial status of the parties.

Appellant up to December 1942 worked as a truck driver at $25 per week. In the latter part of December he went to Ohio and worked as a truck driver for a few

weeks. During this time he earned $100, but his expenses were about half his earnings. In January 1943 he went to work for the Blue Grass Ordnance Depot at $6 per day for five days, with added pay for overtime work. He said that his average wage was about $30 per week, due to the fact that sometimes he did not work a full week; that he paid from his weekly wage $3.75 per week for the purchase of War Bonds, $1.50 Victory tax, 90c per week insurance; transportation to and from his place of work and lunch took from his weekly pay $4.40. This he said left him a total of about $18 per week.

Appellant and his wife live with her father and mother, but there is no proof as to whether or not he paid rent or board or both, or if so how much. It was shown, perhaps as demonstrating in part the ability of appellant and wife to care for the children, or some of them, that the present wife is a wage earner. It is not shown whether or not prior to January 1942, appellee had regular remunerative work. Since that date she has engaged in factory work netting her about $15 per week. She partially lists her expenses: Rent $12.50 per month, lights, water, gas, and insurance about $12 per month, and $6.25 per month towards the older daughter's schooling. She had her grocery, medical, clothing and miscellaneous bills, which she did not estimate. It is shown that at times she has had some help from her father, and assistance from the Welfare Department. She said that she had been and is unable to furnish the children with proper and sufficient clothing and food at times; as a result the children were unhappy.

We would be in better position to consider and determine the question of allowance, had it been shown more fully how, in what manner and for what purposes the appellant was compelled to expend his wage for support of himself and wife, and as to how much was required beyond fixed charges to support appellee and her children in a respectable manner. It is not claimed that either party was extravagant or wasteful, and it must be assumed that their incomes were put to useful purposes. If we take appellant's proof as to net earnings, he averages about $18 per week. If he is required to deposit in the bank to appellee's credit $15 weekly this leaves him little for his own support, assuming that he contributes nothing to his wife's support. We think he should not be required to give up

such proportion of his earnings, though we fully recognize his duty to support his infant children, and to aid the divorced wife. In this respect it may be that the chancellor failed to exercise the judicial discretion vested in him in matters of this sort.

One of the grounds for increase in allowance is the well-recognized rise in the cost of living, particularly food. This affects all parties. It is true that the children now are seven years older than they were when the original order was made, consequently their reasonable demands require greater expenditures; none of them are of self-supporting age.

Due to the undisputed showing made by appellant, we are of the opinion that the chancellor should direct an allowance of $40 per month. We have often said in cases of this sort, that the court retains control of the matter of allowances and custody of infant children, and may at any time make such order as change of conditions or circumstances warrant. Napier v. Napier, 286 Ky. 452, 151 S. W. (2d) 72; Wooton v. Wooton, 283 Ky. 422, 141 S. W. (2d) 561.

When we come to the question of custody of the children we are of the opinion that appellant did not make such a showing as would justify the conclusion that he is better fitted or situated to look after their welfare than is the mother. He admits that the wife is a proper person to care for the children, and has been a good mother to them. In his testimony he suggested that he and his present wife would take them all, or the two elder, one girl and the boy. It develops from his proof that his desire to have custody of any of the children was never expressed until appellee had moved for increase. He admits that during the period following the divorce he had not visited them frequently, excusing himself because "they would never let them come to see me," and his hours of work would not permit. He indicated that the older girl and the boy had expressed a desire to come with him. The girl so testified, but it may be gathered from the record that she was endeavoring to free herself from what appears to be an undesirable situation. County Judge Lindsay said that some time in 1942 the girl was before him on a delinquency warrant; the court was about to commit her to the School of Reform, but by agreement she was sent to the training school above named, and where the

chancellor, we think properly, directed that she remain for further education. The boy, thirteen years of age, said he would be willing to "risk" living with the father, but made no complaint about the treatment by his mother, and said he would be satisfied living with either.

The proof fails to show that appellant is the owner of property. He and his wife live with her mother and father in a four room home, which he says would furnish ample quarters for all, including the children; he suggesting, however, that if awarded custody he would make some other arrangements. His present wife testified that she would willingly take the care of all or some of the children.

Judge Lindsay and Miss Terrill, Welfare supervisor, both said appellee was an excellent mother, the latter saying in her opinion it would be much better for the welfare of the children to leave them with the mother, rather than place them in the father's custody, under conditions existing; she referred then to the fact that the children would be away from the natural mother and in charge of the stepmother or her parents. Harmon v. Harmon, 264 Ky. 315, 94 S. W. (2d) 670.

We do not lay stress on the not too strong expressions of desires of the two older children. These may be taken into consideration, if they be old enough to exercise judgment, but it is not at all controlling; the courts must look to the welfare of the child, rather than its wishes. Harmon v. Harmon, supra; Pope v. Pope, 161 Ky. 104, 170 S. W. 504. If the father here had made better showing of his ability and capability to take care of any of the children in a home of his own, or to control the girl and boy properly, the court below might have been justified in giving him an opportunity to undertake the task. Under the facts developed the situation must remain as it is for the present.

We are of the opinion that the chancellor did not abuse the discretion vested in him as to the custody of the children, and the judgment is affirmed in this respect, but reversed and remanded with directions to make the allowance as indicated.

Affirmed in part; reversed in part.