## Bowman v. Bowman

Oct. 31, 1950.

Ray C. Lucas, Judge.

Roy W. House and Charles C. Smith, for appellant.

Wm. Lewis, William Weaver, and Lewis & Weaver, for appellee.

CHIEF JUSTICE SIMS—Reversing with directions.

This appeal is an aftermath of Bowman v. Bowman, 310 Ky. 509, 221 S. W. 2d 71, wherein we affirmed that part of the judgment granting a divorce to the husband and ordering him to pay the wife $600 in satisfaction of the property rights, but reversed so much of the judgment as gave to the father custody of an 8 year old daughter, Shirley, and directed the chancellor to place Shirley in the custody of her mother and make proper provision for the child's maintenance and visitation upon the part of the father.

Judgment on the mandate was entered on Nov. 26, 1949, giving the custody of the child to her mother and directing the father to pay to the mother the sum of "$—— per month" for the support of the child, beginning Dec. 1, 1949, and to continue the payments until further orders of the court. The father was further ordered to pay the cost of the appeal.

Upon notice, the father on Nov. 28, 1949, filed motion to continue the case on the docket and averred that the conditions of the parties had changed and he had discovered new and important evidence by which he could show the mother was not a fit person to have the custody of the child. This motion was traversed and after a hearing before the chancellor on Dec. 31, 1949, a judgment was entered on Feb. 23, 1950, giving custody of Shirley to her father. The mother prosecutes this appeal.

The change of conditions chiefly relied upon by the father is that after the divorce was granted on July 21, 1948, the mother married her present husband on Aug. 26, 1948. However, Shirley's father married his present wife in the following October, the exact date he could not remember. Neither was acquainted with nor had met their new spouse before the divorce was granted. It hardly behooves the husband to complain

of his former wife's marriage so soon after the divorce since he married within two months after her second marriage. What so strongly impresses the author of this opinion is that both could so soon forget the unhappiness of their first marriage and could again enter into wedlock with comparative strangers. This would certainly lead the uninitiated to believe that marriage has great allure as well as great illusions.

We will not dwell on the delights and disappointments of the marital status but will direct our attention to the record and determine if it presents any change in the conditions of these parties to justify the chancellor in taking the custody of this little girl from her mother and placing it with her father.

Mr. Bowman's conduct has been far from commendable. He disposed of considerable real estate for the purpose of paying his debts, as he testified, yet he did not pay his first wife the $600 this court ordered him to pay her. Furthermore, his residence and ten acres of land upon which it stands is now in the name of his second wife and he does not say how she obtained title, except that he did not convey it to her. At the time this court rendered its opinion in the divorce case, Bowman and his present wife and Shirley were living in Cincinnati, Ohio, and when Shirley's mother sought the custody of the girl in Cincinnati in conformity with the mandate of this court, Bowman brought his present wife and Shirley back to Clay County, Kentucky, "because I didn't want to be in court up there."

The mother and her present husband live in a comfortable home on a farm near Hamilton, Ohio. He is employed on the farm at a salary of $90 per month and in addition thereto receives milk, eggs, the right to raise a garden and is furnished a good house, including telephone and utilities. Furthermore, there is a good school in the community with bus transportation furnished the children. The step-father, Tinsley Smith, testified he desires to have Shirley in his home and expressed a willingness to support the child if her father fails so to do.

The other side of the picture shows the father of Shirley admits his health is bad; that he has no property or income and his greatest objection to the mother

having the child is that his daughter will be 200 miles away from him and in the home with a step-parent. He seems to have overlooked the fact that if he be given the custody of Shirley, she would be in the home of her step-mother and 200 miles away from her mother.

During the hearing the chancellor asked Mrs. Smith if she wanted the custody of the child but wanted Mr. Bowman to pay for Shirley's support. Also, Mr. Smith was asked this question on cross-examination by counsel for Mr. Bowman. The law is that the father is responsible for the support of his child regardless of whether he or the mother has the custody. Certainly, the desire of Mrs. Smith and her husband that Mr. Bowman support Shirley is not unreasonable and should not militate against Mrs. Smith having custody of her daughter.

Shirley testified upon the hearing before the chancellor that she wanted to remain with her father, although she admitted that in a letter to her mother she had inserted a slip of paper on which she had written, "I wish you would get me mother." She repeatedly refused to say why she had written these words to her mother. During the divorce proceeding Shirley had expressed a desire to remain with her mother. Shirley further testified upon the hearing to determine which parent should have custody of her that during the divorce proceedings her mother had tried to get her to burn her father's home. This statement by the child is not impressive due to the fact that at the very time the mother was seeking a property settlement from her husband, a man of limited means, it is hardly probable she would desire to destroy property out of which she was seeking a recovery. Shirley had been in the custody of her father since her parents were divorced in July 1948, and a careful reading of the record convinces us that she was under his domination at the time she testified upon the hearing to determine her custody.

While the expressions of the desire of an infant of tender years as to with which parent it would rather live may be given consideration, they are not binding on courts which look to the welfare of the child rather than to its desires. Gray v. Gray, 295 Ky. 91, 174 S.W.2d 16, 19. As we said in the divorce case, Bowman v. Bowman, 310 Ky. 509, 221 S.W.2d 71, 72, "This Court

has held consistently that the custody of a child of tender years, especially a girl, should be awarded the mother unless it is shown that she is a person of unfit character, or that she cannot provide it with a suitable home." No evidence was produced against the mother's character upon the hearing before the chancellor and all the proof is that she and her present husband can provide a wholesome home for Shirley. As there was no change in the conditions of the parties to justify the chancellor in over-riding our opinion that the mother should have custody of this child, his judgment in awarding the custody to the father must be reversed.

The question is raised in the father's brief that the mother will take the child out of this jurisdiction to her present home in Ohio, which will cause the Kentucky courts to lose jurisdiction over the child and will also work a hardship on the father in exercising his right of visitation. The judgment awarding custody to the mother by reciting that the Clay Circuit Court retains its jurisdiction over the child and has put Shirley in the custody of her mother in Ohio subject to further orders of the court will subject both the mother and daughter to any further orders the chancellor may see fit to make in this action. For discussion of the question see Roberts v. Roberts, 300 Ky. 454, 189 S.W.2d 691; Marlar v. Howard, 312 Ky. 209, 226 S.W.2d 755; and Annotations in 154 A.L.R. 552. As to the hardship or inconvenience on the father in exercising his right of visitation with his child living with her mother in Ohio, that question is answered in Duncan v. Duncan, 293 Ky. 759, 170 S.W.2d 20, 154 A.L.R. 549, where we said that the court must look to the welfare of the child in awarding custody and not to the inconvenience worked on the father in visiting his child.

The judgment is reversed with directions that one be entered giving the custody of Shirley to her mother with right of reasonable visitation awarded the father who will be directed to pay a reasonable sum for the support of his daughter.