## HARP v. HARP.

Court of Appeals of Kentucky.

Feb. 9, 1951.

Leer Buckley, Lexington, for appellant.

Elwood Rosenbaum, Lexington, for appellee.

SIMS, Justice.

On this appeal we must determine which of the divorced parents is to have the custody of their daughter, Patricia Jane Harp, born in May 1941. The proof was heard by Hon. R. J. Colbert, Master Commissioner of the Fayette Circuit Court, who in a concise and well-considered report, recommended to the chancellor that it was for the best interest of the child to put her in the custody of her mother, who resides in League City, Texas, upon the latter executing bond to comply with the further orders of the court. He recommended the child be allowed to visit her father during the month of June each year at his home

in Lexington, and that he pay the mother $10 per week for the maintenance of Patricia, except while the child is visiting him. The chancellor overruled the father's exceptions to the commissioner's report, entered judgment in conformity therewith, and the father appeals.

For the sake of convenience and to avoid confusion, we will refer to appellant as Earl and appellee as Minnie. These parties were married in November 1940, when each was 19 years of age. Their married life was anything but smooth and they separated a time or two before Minnie finally left Earl in 1944 and went to New Jersey. She testified she did not take the child with her because she was not able to support Patricia. The little girl was left with the father and paternal grandmother in Lexington. However, Minnie appears to have been indifferent towards the child, never communicated with her, nor did she do anything for Patricia until she instituted this proceeding to obtain custody of Patricia.

Earl obtained the divorce on July 5, 1947, on the ground of abandonment, and Patricia's custody was awarded to him and his mother, Mrs. Robert L. Bratton. The divorce judgment was entered on constructive service and the warning order attorney's letter to Minnie never reached her and was returned. While working in New London, Connecticut, Minnie met and married her present husband, E. M. Hardin. On March 11, 1948, she filed a motion asking the chancellor to modify the judgment in the divorce suit and to give her custody of Patricia.

On the hearing before the master commissioner on this motion, some 200 pages of proof were taken and the record is so replete with indiscretions of both parents as to cause the commissioner to remark in his report, "The parties were at equal fault and both were sharing their affections with persons other than his or her legal spouse". The commissioner further said that if he had the duty of choosing Patricia's parents, he would have selected neither of these parties. It would serve no good purpose for us to narrate the misconduct of Earl and Minnie, hence we will not do it.

The child cannot be left in the custody of her grandmother, Mrs. Bratton, because she works and is away from home each day and Patricia is left in the care of her great-great-grandmother, who is too old to look after the child. Also, Mrs. Bratton lives under crowded conditions in a house of 7 or 8 rooms occupied by 11 or 12 persons, all of whom must use one bathroom. While Mrs. Bratton did the best she could for the child, she is not so situated as to give Patricia the care and attention a 10 year old girl requires and deserves.

Earl testified he has a traveling position which takes him away from home two or three days a week, his wife is employed, they occupy an efficiency apartment, and it is not practicable for him to have Patricia in his home. His present wife did not testify and we must presume she does not want the responsibility of caring for Patricia.

The child was not in school when the father testified in March for the reason, as he gave, that she had measles the previous August. Also, Mrs. Bratton, the grandmother of the child, admitted Patricia needed some dental work but did not receive it because she did not want to go to a dentist and cried at the suggestion. Such testimony convinces us, as it must have the commissioner and the chancellor, that Patricia is not receiving proper control, care and attention at the hands of her father and grandmother.

Minnie's conduct before her second marriage shows she was not the proper person to have the custody of her daughter. She and Hardin were married before she was divorced. Although Minnie said she thought she was divorced at the time of her second marriage, she and Hardin both deliberately gave false testimony as to the date of their marriage in an attempt to hide the fact they were not then legally married. But during the hearing they were remarried and both voluntarily retracted their false testimony.

It appears from the record that Minnie has been living a life of rectitude in the small town of League City, Texas, since her second marriage and her physical condition is such that she can never have an-

other baby. She is now a regular attendant at church. She and Hardin are respectable citizens and occupy a modern four room apartment in a nice part of town. Hardin has regular and permanent employment with the Monsanto Chemical Company, earning a monthly salary of $333 as an operating engineer. He expressed a desire to take Patricia in his home and even a willingness to adopt her.

■■■ In this character of case the chief concern of courts is the welfare of the child. Ordinarily, the custody of a child of tender years, especially a girl, is awarded to the mother, unless it is shown she is a person of unfit character or is unable to provide a suitable home. Bowman v. Bowman, 310 Ky. 509, 221 S.W.2d 71. In several recent opinions we have said that although a mother has been indiscreet in her youth but has reformed after a second marriage and is leading an upright life and it appears it is for the best interest of the child that she have custody, we will not let her past brand her as an unfit person to rear her child. Ruttencutter v. Ruttencutter, 293 Ky. 556, 169 S.W.2d 604; Clark v. Clark, 298 Ky. 18, 181 S.W.2d 397; Price v. Price, 306 Ky. 214, 206 S.W. 2d 924; Hager v. Hager, 309 Ky. 803, 219 S.W.2d 10.

■ There is no doubt in our minds that the chancellor did not err in placing Patricia in the custody of her mother, with the privilege to the father of having his daughter visit him in his home in Lexington during the month of June each year. Also, we think the chancellor was correct in requiring the mother to execute bond in the penal sum of $1000, with good surety, to guarantee her compliance with the further orders of the court.

■■ Regardless of which parent may be at fault in a divorce proceeding, or which is given the custody of a child, the father is liable for the child's support. Creasy v. Creasy's Next Friend, 241 Ky. 403, 44 S.W.2d 271. However, since the father must defray the expense of Patricia traveling from Texas to Lexington and return each year, and since the mother and her husband express a willingness to support the child, we reduce to $25 a month the $10 a week the chancellor ordered the father to pay for the support of Patricia while she is with her mother. In all other respects the judgment is affirmed. In the event conditions change, of course, the chancellor has jurisdiction to enter any future orders relative to the custody of Patricia or her support.

The judgment is affirmed in part and reversed in part.