### GRIDER v. GRIDER.

Court of Appeals of Kentucky.

Jan. 30, 1953.

Raymond C. Cravens, Lexington, for appellant.

Henry Jackson, James G. Begley, Danville, for appellee.

COMBS, Justice.

This appeal is from a judgment fixing the custody of a five year old girl between her divorced parents.

Harlis Grider was granted a divorce from Margaret Mae Grider in April, 1949. Custody of their daughter, then 18 months old, was given to the father with the right

of visitation at reasonable times by the child's mother. The judgment was modified in June, 1949 and again in June, 1951 to provide more definite periods of visitation by the mother.

In February, 1952, the mother, appellant here, moved the court to award her the exclusive custody of her daughter. The court entered a "third modified judgment and order." The meaning of this order is somewhat obscure to us, but both parties interpret it to give custody of the child to her father from August through May, which covers the county school term, with privilege to the mother to have the child from Friday afternoon until Monday during this period; the mother to have custody of the child during the months of June and July, with privilege to the father to have her from Monday to Friday of the fourth week of those two months.

The parties were married December 22, 1943, and lived together until September 19, 1948. The separation was caused by the wife "running around" with another man, one John C. Weldon, to whom she is now married. She was seen on numerous occasions with Weldon from the time of the separation until the time of the divorce, and on one occasion her husband had them arrested while in a hotel together in Lexington.

She married Weldon six days after the divorce was granted and is now living with him in Harrodsburg, Kentucky. They have a two year old daughter and live in a three-room house in a respectable neighborhood. He is regularly employed, making $50 per week. The neighbors testified they are good neighbors and are well-behaved.

The child's father now lives with his parents and six brothers and sisters in a four-room house in Casey County. The men of the family are hard-working, honest, tenant farmers, not affluent, but respected and liked by their neighbors. The whole family is devoted to Janice and would like to keep her with them. Harlis testified he wanted her "the worst in the world."

The custody of a five year old child in circumstances such as these is at best a difficult problem, and one in which no perfect solution can be found. We recognize that the Chancellor usually is in a better position to decide on matters of this sort than is this Court, sitting at a distance from the immediate neighborhood, and we will not disturb the Chancellor's conclusions if there be no more than a doubt as to the correctness of his decision. Travis v. Travis, 282 Ky. 215, 138 S.W.2d 336; Price v. Price, 306 Ky. 214, 206 S.W.2d 924, 926. The language used in Price v. Price, supra, is apropos to the present case:

"In awarding custody of children in a divorce suit, very large discretion must be permitted to the Chancellor, and it is only where this discretion has apparently been abused that this court will interfere with his decision. From a reading of this entire record we are not prepared to say that that discretion was abused in this case. The Chancellor evidently knew the parties involved here, their background and what would be the best for the welfare of the child involved, and we do not feel that his decision should be disturbed on the record as it now stands."

In affirming the Chancellor, we are not unmindful of the rule that the custody of a child of tender years will be awarded to the mother unless it be made to appear she is not a suitable person and that when a mother has been indiscreet in her youth but has reformed, we will not let her past brand her as an unfit person to rear her child. Harp v. Harp, 314 Ky. 618, 236 S.W.2d 698, and cases cited therein. It appears that the Chancellor had these legal principles in mind when he reached his conclusions and we think the record supports his judgment.

The court retains control of the action, and the fact the Chancellor has already modified the judgment on three occasions indicates he is giving careful attention to the case.

Judgment affirmed.